ACCEPTED
12-14-00210-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/14/2015 10:54:08 AM
CATHY LUSK
CLERK

12-14-00210-CR

IN THE TWELFTH COURT OF APPEALS OF TEXAS

RECEIVED IN
12th COURT OF APPEALS
TYLER, TEXAS

7/14/2015 10:54:08 AM

CATHY S. LUSK
Clerk

TYLER, TEXAS

**FILED**

7/14/2015

**Twelfth Court of Appeals
Cathy Lusk
Clerk**

BOBBIE DEWAYNE GRUBBS
Appellant

v.

THE STATE OF TEXAS
Appellee

On Appeal from Cause No. 14-CR-19,074

in the 273RD Judicial District Court of Shelby County, Texas

APPELLEE'S BRIEF

123rd JUDICIAL DISTRICT ATTORNEY'S OFFICE

Kenneth Florence, District Attorney
Lead Counsel
State Bar No. 00790698
200 San Augustine Street - Suite 12
Center, Texas 75935
(936) 598-2489
(936) 598-4106 Fax

**Appellee requests argument if the Appellant is granted oral argument**

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Reversible Error Standard Generally Applicable to the Case . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

      Issue A: Denial of Motion for Mistrial. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      Issue B: Charge Error: Defenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      Issue C: Denial of Motion to Suppress Confession (interview room) . . . . .10

      Issue D: Denial of Motion to Suppress Confession (in-car video) . . . . . . . 13

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**CASES**

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985) . . . . . . . . . . . . . . . . . 3, 8

*Arizona v. Fulminante*, 499 U.S. 279 (1991) . . . . . . . . . . . . . . . . . . . . . . . .11

*Barrera v. State*, 982 S.W.2d 415 (Tex.Crim.App. 1998) . . . . . . . . . . . . . . . . . . .9

*Busby v. State*, 253 S.W.3d 661 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . . . 7

*Coble v. State*, 330 S.W.3d 253 (Tex.Crim.App. 2010) . . . . . . . . . . . . . . . . . . . .7

*Delao v. State*, 235 S.W.3d 235 (Tex.Crim.App. 2007) . . . . . . . . . . . . . . . . . . . .11

*Gray v. State*, 159 S.W.3d 95 (Tex.Crim.App. 2005) . . . . . . . . . . . . . . . . . . . . . 4

*Guevara v. State*, 152 S.W.3d 45 (Tex.Crim.App. 2004) . . . . . . . . . . . . . . . . . . . 3

*Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App. 1989) . . . . . . . . . . . . . . . . . . . 4

*Hart v. State*, 264 S.W.3d 364 (Tex. App.—Eastland 2008) . . . . . . . . . . . . . . . . .6

*Holland v. State*, 761 S.W.2d 307 (Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . . .6

*Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App. 2006) . . . . . . . . . . . . . . . . . . . . .3

*Matchett v. State*, 941 S.W.2d 922 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . .5,6

*Mays v. State*, 318 S.W.3d 368, 382 (Tex.Crim.App. 2010) . . . . . . . . . . . . . . . . . 9

*McCraw v. Maris*, 828 S.W.2d 756 (Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . 6

*Miranda v. Arizona*, 384 U.S. 436 (1966) . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14, 15

*Motilla v. State*, 78 S.W.3d 352 (Tex.Crim.App. 2002) . . . . . . . . . . . . . . . . . . .4

*Posey v. State*, 966 S.W.2d 57 (Tex.Crim.App. 1998) . . . . . . . . . . . . . . . . . . . .8

*Torres v. State*, 585 S.W.2d 746 (Tex. Crim. App. [Panel Op.] 1979) . . . . . . . . . . 9

*Vega v. State*, 394 S.W.3d 514 (Tex.Crim.App. 2013) . . . . . . . . . . . . . . . . . . . 8

*Villareal v. State*, 453 S.W.3d ____ (Tex.Crim.App. 2015) . . . . . . . . . . . . . . . . . 8

**STATUTES**

VERNON'S TEX. CODE CRIM. PROC., ART. 1.14(a) . . . . . . . . . . . . . . . . . . . . .5

VERNON'S TEX. CODE CRIM. PROC., ART. 36.19. . . . . . . . . . . . . . . . . . . . . .3

VERNON'S TEX. CODE CRIM. PROC., ART. 38.21. . . . . . . . . . . . . . . . . . . . . .3

VERNON'S TEX. CODE CRIM. PROC., ART. 38.22. . . . . . . . . . . . . . . . . . . . . .3

**RULES OF COURT**

TEX. R. APP. PRO. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

TEX. R. APP. PRO. 38.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

TEX. R. APP. PRO. 39.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
TEX. R. APP. PRO. 44.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 3, 4, 6

**TREATISES**

"Arguing For and Against Jury Charge Errors", JAY BRANDON, Chief, Conviction Integrity Unit, Bexar County District Attorney's Office, 2015 ROBERT O. DAWSON CONFERENCE ON CRIMINAL APPEALS, May 27-29, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

The State of Texas hereby presents this its Appellee's Brief on appeal.

## Statement Regarding Oral Argument

The State asserts that no new novel issues that would contribute to the jurisprudence of the State are presented in the instant appeal; the appeal does not involve important issues of constitutional significance, nor is there a spilt of authority amongst the courts of appeal concerning any issue presented. Accordingly, the State does not believe that oral argument would benefit the court, and therefore, urges the court to resolve this appeal solely on the pleadings and on the record. TEX. R. APP. PRO. 39.1 (hereafter "TRAP"). *However, if the Court grants Appellant oral argument, Appellee requests oral argument.*

## Summary of the Argument

In the instant case, Appellant has raised four (4) issues involving alleged statutory or evidentiary rule violations, none of which have affected *substantial rights* of the defendant such as to constitute reversible error under TRAP 44.2(b).

Appellant's first issue deals with denial of a motion for mistrial. As discussed more completely below, the argument is within the zone of reasonable disagreement such that it cannot be held that the trial court abused it's discretion.

Appellant's second issue asserts that the trial court failed to sua sponte instruct the jury concerning a non-pattern jury charge concerning involuntary

1

intoxication.  Even under the cases cited by Appellant, he would not be entitled to such an instruction as he has failed to meet the first prong of a now-questioned older case.  Further, the defendant did not request any such jury instruction and the issue is waived/procedurally barred.

Appellant's third and forth issues argue that Appellant's video statements in a police interview room, and secondly, in the back of a DPS Trooper car, where not voluntary and should have been suppressed.  However, the argument does not describe any nexus between such factors as how the presence of a law enforcement helicopter, the end of a long low-speed pursuit, length of time in an interview room, and the size of the Appellant,...among other asserted facts, caused Appellant's confessions to be involuntary.  In fact, throughout the confessions, Appellant repeatedly asserts he was voluntarily telling all.  The trial court did not abuse it's discretion in holding the confessions admissible.

## Standard of Review

Appellee agrees with Appellant's statement concerning the standard of review for the Issues A, C and D herein, to-wit: Abuse of Discretion.  (Issue A at P. 14; Issue C at P. 22; Issue D at P. 24, n. 4.)(citations to Appellant's Brief).

Appellant does not state the standard of review for Issue B which alleges charge error for the trial court failing to *sua sponte* charge a defensive issue.

2

Generally, *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985)(op. on rehearing), which interprets Art. 36.19 of the Texas Code of Criminal Procedure, is the only standard for reviewing jury charge error, no matter how the claim is raised. *Igo v. State*, 210 S.W.3d 645 (Tex.Crim.App. 2006)(charge error raised in motion for new trial); *Guevara v. State*, 152 S.W.3d 45 (Tex.Crim.App. 2004)(Rule 44.2(b) does not apply.) However, this case presents a limited exception wherein *Almanza* does not apply as described on P. 7 of this brief. Accordingly, there is no standard as there is nothing for the Court to review. *Id.*

**Reversible Error Standard Generally Applicable to the Case**

In this case, all of Appellant's issues expressly rely on state statutes or evidentiary rules, and not on any state or federal constitutional provisions. Therefore, the standard set forth in Texas Rule of Appellate Procedure 44.2(b) applies: *any error that does not affect substantial rights must be disregarded*. The latter two issues of Appellant, Issue C and Issue D, also expressly rely[1] on Tex. Code Crim. Proc., art. 38.21 and 38.22, and not expressly on any state or federal constitutional provision. However, in the unlikely event the Court deems a constitutional provision was impliedly invoked, the standard of Texas Rule of Appellate Procedure 44.2(a) may apply. In that case, the harmless error standard

---

[1]See Appellant's Brief at P. 21.

for Constitutional error is stated, "the court must reverse a judgment of conviction ... unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction...." TRAP 44.2(a).

It should be noted that the Court of Criminal Appeals has held that when an Appellant claims only a statutory violation, the error *must* be treated as nonconstitutional for purposes of a harm analysis, and therefore, the error cannot be deemed structural. *Gray v. State*, 159 S.W.3d 95 (Tex.Crim.App. 2005). In addition, in this particular case, it is especially important to note that an appellate court may consider overwhelming evidence of an Appellant's guilt in it's harm analysis under TRAP 44.2(b). *Motilla v. State*, 78 S.W.3d 352, 360 (Tex.Crim.App. 2002); *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App. 1989).

## Argument

### Issue A: Denial of Motion for Mistrial

In his first issue, Appellant states the trial court erred when it refused to grant a mistrial. Appellee agrees with Appellant's statement concerning the standard of review, to-wit: abuse of discretion. (Appellant's Brief at P. 14, 16).

Herein, a lengthy video confession in an interview room was played to the jury. (4 RR 66 (represented to be 2 hours and 40 minutes long at pre-trial); 5 RR 117 (jury heard "2 and a half hours")). Unfortunately, as Appellant suggests, an

4

unredacted few seconds of the video was inadvertently played to the jury. (Appellant's Brief at 13; 5 RR 105). However, upon *Appellee's* discovery of the error, Appellee ejected the video disk and inserted the proper disk to continue to play for the jury, and informed the trial court. 5 RR 105-122 (whole colloquy regarding issue).

The defense did not object *until long after* Appellee stopped the video, brought the matter to the attention of the trial court (5 RR 105), the defense initially stating it had no objection and was "fine" ( 5 RR 111-113) and had even been unaware whether the jury heard the statement or not (5 RR 110), the video had resumed playing (5 RR 114), there was an intervening unrelated objection (5 RR 115), then the video continued playing again (*Id.*), later there was a 20 minute break (5 RR 115-116), and **only then** the defense lodged an objection and moved for a mistrial...after the entire video had already been played and a lengthy break had been held (5 RR 117)("The jury cannot un-hear the two and a half hours that they've heard."- defense counsel (*Id.*)).

With all of the breaks and passage of time, it cannot be credibly argued there was a contemporaneous objection to preserve even a claim of error, however unfounded it might have been. Any right of a criminal defendant can be waived. VERNON'S TEX. CODE CRIM. PROC., ART. 1.14(a); *Matchett v. State*, 941 S.W.2d

5

922, 930-31 (Tex. Crim. App. 1996); *Holland v. State*, 761 S.W.2d 307, 313 (Tex. Crim. App. 1988). To preserve error, there must be a *timely*, specific request, objection, or motion. TEX. R. APP. PRO. 33.1; *Hart v. State*, 264 S.W.3d 364, 368 (Tex. App.—Eastland 2008, pet. ref'd).

In any event, Appellee never thereafter emphasized or even mentioned the complained of admission by Appellant[2]. The brief mention was in the middle of a long confession. Additionally, there was otherwise overwhelming evidence of Appellant's guilt. 5 RR, 6 RR, passim.

The standard for reversible error for this claim is whether substantial rights of the Appellant have been affected. TRAP 44.2(b). Here, considering the totality of the appellate record, which overwhelmingly substantiated Appellant's guilt of Capital Murder, the complained of error, did not affect substantial rights of the Appellant.

Even under the civil law case *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992), cited by Appellant in his brief at P. 14, the Appellant has failed to meet that standard. Appellant makes no argument as to how the alleged trial court error was "reasonably calculated to cause and probably did cause rendition of an improper

---

[2]We are dealing with Appellant's own statement about being "to the pen before;" importantly, we are not dealing with a law enforcement officer or other witness testifying about Appellant's prior trip to the penitentiary.

judgment." *Id.* Therefore, this issue may also be considered to be inadequately briefed, and thus, present nothing for review. *See* TEX. R. APP. PROC. 38.1(e), (f), (h), (I); *Busby v. State*, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008).

Finally, it was within the "zone of reasonable disagreement[3]" for the judge to not grant a mistrial, and in fact, the judge was further correct in not even instructing the jury to disregard the exceedingly brief admission, because to do so would have drawn more attention to it[4]. After all, the complained of *couple of seconds* excerpt was subsumed within a *lengthy hours' long* video confession. (4 RR 66 (represented to be 2 hours and 40 minutes long at pre-trial); 5 RR 117 (jury heard "2 and a half hours" in total). Therefore the trial court ruling "must be upheld" as per the *Coble* case cited by Appellant in his brief at P. 16. (See footnote 3 for full citation).

The totality of the first issue should be overruled.

## Issue B: Charge Error: Defenses

In his second issue, Appellant claims that the trial court failed to *sua sponte*

---

[3]As cited by Appellant in his brief at P. 16: *Coble v. State*, 330 S.W.3d 253, 292 (Tex.Crim.App. 2010).

[4]*See* 5 RR 119 ("I'm certainly not suggesting the Court give them an instruction not to conclude that, because that would obviously give them the idea that that's what it could mean" - State's Counsel).

charge the jury regarding Appellant's claim of involuntary intoxication[5].

Appellant himself never requested such a defensive instruction at trial, so in any event, this claim is waived/procedurally defaulted. Though not dispositive, such an instruction is not found in the Texas Pattern jury charges.

If the defense does not request a defensive issue, the trial judge has no duty to include a charge on that issue, because without a defense request, a defensive issue is not "the law applicable to the case." *Vega v. State*, 394 S.W.3d 514, 518-19 (Tex.Crim.App. 2013). If the defense fails to request an instruction on a defensive issue at trial, there is no error, and *Almanza*[6] does not apply, even if the defense can demonstrate "egregious harm" on appeal. *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App. 1998). In any event, the weakness of the evidence raising a defensive issue can also contribute to a finding of lack of "egregious harm" under *Almanza*, and that presupposes the defense actually requested the instruction, which did not happen in this case. *Villareal v. State*, 453 S.W.3d ____ (Tex.Crim.App. 2015)(*As cited* in "Arguing For and Against Jury Charge Errors",

---

[5]At trial in opening statement, Appellant's counsel claimed Appellant voluntarily took "Pump-It Powder" but that he was involuntarily intoxicated because he did not know it would cause him to be intoxicated. 5 RR 22. It seems illogical that Appellant would claim taking multiple doses of a clearly marked stimulant would not affect him. No reasonable juror would have believed this evidence anyway.

[6]686 S.W.2d 157, 171

8

JAY BRANDON, Chief, Conviction Integrity Unit, Bexar County District Attorney's Office, 2015 ROBERT O. DAWSON CONFERENCE ON CRIMINAL APPEALS, P. 13, May 27-29, 2015).

However, if a court does *sua sponte* charge the jury on a defensive issue such as self-defense or entrapment, the court has an obligation to get the charge right. *Barrera v. State*, 982 S.W.2d 415, 416-17 (Tex.Crim.App. 1998). To preserve error, if any, trial counsel must pinpoint specific evidence in trial that raised an issue, and the legal basis for applying it. *Mays v. State*, 318 S.W.3d 368, 382-83 (Tex.Crim.App. 2010). Such was not done in this case.

Even Appellant's own case cited for this proposition shoots down his claim. Under *Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. [Panel Op.] 1979)(a 36 year old now-questioned case by the Appellant's own admission), Appellant cannot meet the first prong, namely, that he exercised "no independent judgment or volition in taking the intoxicant." Appellant's Brief at 19, *citing Torres* at 749; *see also* Appellant's note 3 on P. 19 concerning questioned nature of this authority. Appellant *knew* he was taking the substance "Pump-it Powder", at least according to his lawyer's opening statement (5 RR 22) and the testimony of his expert witness Dr. Edward Gripon (9 RR 16), which was the only testimony concerning "Pump-It Powder." Dr. Gripon had never heard of the substance

9

before (9 RR 17), and the doctor's only source of this information came from the Appellant himself (9 RR 25). The Appellant elected not to testify. (9 RR 68).

To be specific, Appellant's attorney stated in opening argument:

"The evidence is going to show that on or around April the 26th of 2012, after work, Mr. Grubbs, feeling fatigued, stopped by a convenience store in Montgomery County, Texas. The evidence will show that, in the past, that he has used such stimulants as 5-Hour Energy and other things that are sold over the counter. In this particular instance the evidence is going to show that the clerk said, Getting good reports on this Pump-It Powder; so he bought ten vials of Pump-It Powder." (5 RR 22)

Clearly, by his own admission, Appellant knew the substance was a stimulant, and he had used stimulants in the past, so he bought ten (10) packages of it...no doubt to be sure he got the desired effect.

Issue B should be overruled because the issue was waived, *Almanza* does not apply even if the Appellant could demonstrate "egregious harm", and a *sua sponte* instruction on involuntary intoxication was not supported under the facts nor under the law.

Appellant's second issue should be overruled.

## Issue C: Denial of Motion to Suppress Confession (interview room)

In his third issue, Appellant claims his interview room confession to Detective Keith Echols of the Montgomery Sheriff's Office should have been

suppressed because it was not voluntary. Appellant *does not* claim that he did not receive the proper admonishments. (*E.g.*, *Miranda* rights)[7]. His claim seems to simply be that, under the totality of the circumstances, his interview room confession could not be voluntary. However, this Court should review the relevant portions of the pre-trial suppression hearing as well as the trial statements actually introduced at trial before the trier of fact. (*See* 4 RR 60-80 (pre-trial); 5 RR 124-167 (trial)). Throughout his confession Appellant clearly and unequivocally stated he was talking voluntarily, and almost seemed relieved to "get it off his chest" and tell his story. As Appellant notes in his brief at P. 22, "[a]s a general rule, a determination whether a statement was voluntarily rendered is analyzed by examining the totality of the circumstances." *Citing*, *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991); *Delao v. State*, 235 S.W.3d 235, 239 (Tex.Crim.App. 2007).

To be specific, Detective Echols *pre-trial suppression hearing testimony* included: Appellant appeared to be lucid, not under the influence, and in control of his mental faculties (4 RR 60); Appellant did not refuse to talk, nor did he ask for a lawyer (4 RR 60, 62); Appellant had "smoke" breaks (4 RR 61); the video recording is one continuous uninterrupted recording (4 RR 62); the confession

---

[7]*Miranda v. Arizona*, 384 U.S. 436 (1966).

took 2 hours and 40 minutes, but was all in one day (4 RR 65-66); Appellant had "What-a-Burger" in addition to "smoke" breaks (4 RR 67); Appellant did not ask for anything else (4 RR 67); he had restroom breaks (4 RR 67); he was not intimidated (*Id.*); Appellant was cooperative and not angry (4 RR 68); Appellant was given *Miranda* warnings after each and every break, which was more than 3 or 4 occasions (4 RR 68); Appellant understood the questions and the consequences of answering those questions (4 RR 69); after each break, Appellant was asked whether or not he was "still willing to talk to us?", to which he replied "yes" (4 RR 70); Appellant's statements were voluntary and not the product of coercion (*Id.*); there were no verbal threats or motions to strike the Appellant to get him to talk, and he was not forced into a chair or restrained in any way (4 RR 76); Appellant was "talkative" throughout (4 RR 77); Appellant never mentioned "bath salts" or being under the influence of anything (4 RR 78); Appellant was calm and did not appear to be under the influence of anything (4 RR 79).

Further, Detective Echols *trial testimony* included: Appellant had breaks during the confession (5 RR 124); the total interview time of the video, including breaks, was 4 hours and 15 minutes (5 RR 125); the Appellant did not appear to be under the influence of medications or drugs during the interview (5 RR 141); there was no indication that drugs caused Appellant to suffer mental illness (5 RR 142);

12

Appellant did not appear high or insane (5 RR 157-158); Appellant was not offered any deals in exchange for his confession (5 RR 167).

Appellant's third issue should be overruled because under the totality of the circumstances, his interview room confession was voluntary.

## Issue D: Denial of Motion to Suppress Confession (in-car video)

In his fourth issue, Appellant claims his in-car statement to DPS Trooper Barnes should have been suppressed because it was also not voluntary. As in Issue C *supra*, Appellant *does not* claim that he did not receive the proper admonishments. His claim is again that, under the totality of the circumstances, his in-car confession could not be voluntary. Again, due to the totality of the circumstances being the framework for analysis, this Court should review the relevant portions of the pre-trial suppression hearing on this confession as well as the trial statements actually introduced at trial before the trier of fact. ((4 RR 14-49)(pre-trial suppression hearing); (5 RR 60-79)(trial testimony)). In this other confession, Appellant again clearly and unequivocally states he is talking voluntarily, and again seemed relieved to "get it off his chest" and tell his story. Both confessions were clearly voluntary.

To be specific, Trooper Barnes *pre-trial suppression hearing testimony* included: Appellant did not fight with the arresting officers, and he was arrested

without incident (4 RR 14); Barnes made no attempt to get information from Appellant (4 RR 15); Appellant's statements were spontaneous..."He talked a lot." (4 RR 16); Appellant did not appear intoxicated, he did not need medical attention, and he was not confused (4 RR 17); Appellant appeared lucid, in control of his faculties, he did not report seeing or hearing hallucinations, there were no threats or intimidation, he was not coerced into speaking (4 RR 18); Barnes read Appellant his rights off of a little yellow card, and Appellant understood his rights (4 RR 19-20); Barnes did not intend to interrogate Appellant, but read him his rights because he did not want to "be that guy" (who messed up the case) (4 RR 20-21); the entire conversation was recorded (4 RR 21); the statements appeared to be voluntary to Barnes (4 RR 22); there were "helicopters in the sky" when Appellant was pulled over (4 RR 25); the first thing Appellant told Barnes after he pulled him over was "I waive everything" (4 RR 44); Appellant appeared to understand the *Miranda* warning (4 RR 44); *amazingly,* on the trip to the Montgomery County Jail the Appellant pointed out to Trooper Barnes that the Watchguard camera system was indicating that Barnes needed to punch a button for it to keep recording Appellant's statements (4 RR 46-47).

Further, Trooper Barnes *trial testimony* included: when Appellant was read his *Miranda* rights, he replied "I know my rights brother." (5 RR 60-62); Barnes

14

had no intention of questioning Appellant, but gave the *Miranda* warning anyway because he did not want to be "that one" who messed the case up (5 RR 62); Appellant's statements were spontaneous statements and not the result of any questioning (5 RR 64); no threats or force were used to get Appellant to confess (5 RR 65); Appellant did not appear delusional (5 RR 69); Appellant pointed out that Barnes needed to punch a button on the camera system for it to keep recording Appellant's statements (5 RR 72); Barnes continued to record at Appellant's request (5 RR 72); Appellant and Barnes had no other conversations than what occurred in Barnes' vehicle (5 RR 75); Appellant did not seem erratic (*Id.*); Appellant did not appear intoxicated (5 RR 76); Appellant did not complain about any medical conditions (5 RR 78); Appellant never mentioned "bath salts" (5 RR 79).

Based upon the totality of the circumstances, Appellant's other confession was also voluntary, and Appellant's fourth issue should likewise be overruled.

## PRAYER

**WHEREFORE** for the reasons set forth above, Appellant's judgment and sentence should be in all things AFFIRMED.

Respectfully submitted,

123rd JUDICIAL DISTRICT ATTORNEY

15

/S/ Kenneth B. Florence
STATE'S ATTORNEY    TB#00790698
200 San Augustine Street ~ Suite 12
Center, Texas 75935
(936) 598-2489     Fax (936) 598-4106

## CERTIFICATE OF COMPLIANCE

The computer generated Appellee's Brief in this case contains 4063 words. Appellee certifies he relied on the word count of the computer program used to prepare the document.

/S/ Kenneth Florence

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appellee's Brief, as related above, was served upon, Stephen Shires, Attorney for Appellant, 123 San Augustine Street, Center, Texas 75935, by facsimile (936) 598-3031 and by E-file Texas, on this the 14th day of July 2015.

/S/ Kenneth Florence